UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
EXCELLENT HOME CARE
SERVICES, LLC,

                              Plaintiff,

                                                        **ORDER**
            - against -                                 13 CV 5390 (ILG) (CLP)

FGA, INC.,

                              Defendant.

-------------------------------------------------------X

**POLLAK**, United States Magistrate Judge:

On August 26, 2013, Excellent Home Care Services, LLC ("Excellent Home" or

"plaintiff") commenced this suit in state court against FGA, Inc. ("FGA" or "defendant"),

alleging breach of contract and negligence by defendant.  On September 27, 2013, defendant

removed the case to this Court.

Presently pending before the Court are the plaintiff's and defendant's respective motions

for sanctions.

## FACTUAL AND PROCEDURAL BACKGROUND

According to the Amended Complaint, plaintiff Excellent Home is a licensed home

health care provider.  (Am. Compl.[1] ¶ 2).  Plaintiff alleges that defendant FGA acts on behalf of

-----

[1] Citations to "Am. Compl." refer to the Verified Amended Complaint, filed on September
24, 2014.

health care providers to maintain, arrange, process, and transmit confidential patient billing data and accounts receivable calculations to both insurance carriers and government regulators. (Id. ¶ 4).

Plaintiff alleges that, in approximately May 2007, the parties entered an agreement under which defendant agreed to act as plaintiff's agent "to prepare and transmit, to [insurance] [c]arriers and [r]egulators, confidential patient medical billing data generated by [plaintiff]." (Id. ¶ 7). Plaintiff claims that defendant breached the parties' agreement by: 1) "[f]ailing to timely and or properly transmit claims on behalf of [plaintiff], thereby resulting in denials of payment to [plaintiff];" 2) "[f]ailing to monitor claims and denials;" and c) "[f]ailing to recognize that [plaintiff's] claims were being denied and that such claims were not resubmitted to the Carrier." (Id. ¶ 10).

On August 27, 2014, the Honorable I. Leo Glasser granted defendant's motion to dismiss the Complaint, without prejudice to plaintiff being permitted to file an amended complaint. Plaintiff filed an Amended Complaint on September 24, 2014, alleging breach of contract, negligence, and breach of fiduciary duty. Thereafter, on February 4, 2015, Judge Glasser granted defendant's motion to dismiss plaintiff's claims for negligence and breach of fiduciary duty, leaving the claim for breach of contract as the sole remaining claim. Since that date, discovery has been ongoing.

On January 20, 2017, defendant filed a letter seeking leave to move for sanctions pursuant to Rule 37 of the Federal Rules of Civil Procedures based on plaintiff's "continuing failure to cure specific deficiencies in its document production despite substantial efforts to

2

voluntarily have [plaintiff] cure these deficiencies." (1/20/17 Def.'s Ltr.[2] at 1). On January 24,

2017, the Court Ordered plaintiff to show cause why sanctions should not be imposed. Plaintiff

responded to the Order to Show Cause on January 27, 2017, arguing that Excellent Home had

complied with its discovery obligations and had provided all documents within its "possession

and access," other than certain documents that defendant "specifically and uniquely" had not

requested. (See 1/27/17 Pl.'s Ltr.[3] at 1-3). Additionally, plaintiff requested sanctions against

defendant pursuant to Rule 37 of the Federal Rules of Civil Procedure based on defendant's

alleged failure to comply with its own discovery obligations. (Id. at 3-6).

Also on January 24, 2017, plaintiff filed a letter seeking to have the Court disqualify

defendant's counsel on the grounds that defendant's counsel had previously represented plaintiff

in a state court action, and thus had a conflict of interest. (1/24/17 Pl.'s Ltr.[4] at 1).[5]

On January 30, 2017, a Status Conference and Show Cause Hearing was held before the

undersigned. However, the attorney who appeared for plaintiff, Barry R. Feerst, claimed he "had

no knowledge of the status of the case" and could not respond to the allegations in defendant's

motion for sanctions nor could he address the other issues in the case. (Order filed on January

---

[2]Citations to "1/20/17 Def.'s Ltr." refer to defendant's letter, filed on January 20, 2017.

[3]Citations to "1/27/17 Pl.'s Ltr." refer to plaintiff's letter, filed on January 27, 2017.

[4]Citations to "1/24/17 Pl.'s Ltr." refer to plaintiff's letter, filed on January 24, 2017.

[5]A hearing to address issues relating to the motion for disqualification has been scheduled for July 20, 2017 and that motion will be addressed in a separate order.

31, 2017, at 1).[6]  Accordingly, the Court set a number of deadlines for the parties to brief the motion for disqualification and to supplement their submissions relating to the parties' respective motions for discovery sanctions.  Specifically, on the parties' respective motion for sanctions, the Court permitted the parties to augment their papers by February 6, 2017, and to respond to their adversary's submission by February 13, 2017.

On February 6, 2017, defendant filed a letter in further support of its motion for sanctions.  (See 2/6/17 Def.'s Ltr.[7]).  On February 13, 2017, defendant filed a letter in opposition to plaintiff's January 31, 2017 letter seeking discovery sanctions.  (See 2/13/17 Def.'s Ltr.[8]).  Plaintiff, having failed to file a submission in further support of its sanctions motion by February 6, nonetheless filed a letter on February 13 in which it responded to defendant's motion for sanctions and also advanced additional arguments in support of its motion for sanctions.  (See 2/13/17 Pl.'s Ltr.[9]).

DISCUSSION

Plaintiff and defendant each seeks sanctions against their adversary for allegedly failing to comply with their discovery obligations.  Defendant claims that plaintiff has failed "to cure

---

[6]The Court notes that Mr. Feerst is noticed as one of the attorneys representing plaintiff in this case.  The Court further notes that plaintiff's response to the Order to Show Cause was signed by Mr. Feerst.  (See 1/27/17 Pl.'s Ltr. at 6).

[7]Citations to "2/6/17 Def.'s Ltr." refer to defendant's letter, filed on February 6, 2017.

[8]Citations to "2/13/17 Def.'s Ltr." refer to defendant's letter, filed on February 13, 2017.

[9]Citations to "2/13/17 Pl.'s Ltr." refer to plaintiff's letter, filed on February 13, 2017.

specific deficiencies in its document production despite substantial efforts to voluntarily have

[plaintiff] cure these deficiencies." (1/20/17 Def.'s Ltr. at 1). Plaintiff seeks sanctions against

defendant, arguing that defendant has failed to comply with its discovery obligations. (1/27/17

Pl.'s Ltr. at 3).


    A. Legal Standard – Rule 37 Sanctions

    "Whether exercising its inherent power, or acting pursuant to Rule 37, a district court has

wide discretion in sanctioning a party for discovery abuses." FDIC v. Horn, No. 12 CV 5958,

2015 WL 1529824, at *3 (E.D.N.Y. Mar. 31, 2015) (citing Reilly v. Natwest Mkts. Grp. Inc., 181

F.3d 253, 267 (2d Cir. 1999)). "For less severe sanctions, such as fines and cost-shifting, the

Court's inquiry focuses mainly on the misconduct of the responding party; for more severe

sanctions, such as dismissal, preclusion[,] or the imposition of an adverse inference, the court

must also assess whether the requesting party suffered prejudice as a result of the loss or

withholding of evidence." Nycomed U.S. Inc. v. Glenmark Generics Ltd., No. 08 CV 5023,

2010 WL 3173785, at *3 (E.D.N.Y. Aug. 11, 2010). In deciding what the appropriate sanction in

a matter is, the Court should consider "'the prophylactic, punitive[,] and remedial rationales' of

discovery sanctions." Id. at *10 (quoting Passlogix, Inc. v. 2FA Tech., LLC, 2FA, Inc., No. 08

CV 10986, 2010 WL 1702216, at *37 (S.D.N.Y. Apr. 27, 2010)).

    Rule 37(b)(2) provides that if a party "fails to obey an order to provide or permit

discovery," the Court's response may include any of the following sanctions:

        (i) directing that the matters embraced in the order or other

> designated facts be taken as established for purposes of the action,
> as the prevailing party claims;
> (ii) prohibiting the disobedient party from supporting or opposing
> designated claims or defenses, or from introducing designated
> matters in evidence;
> (iii) striking pleadings in whole or in part;
> (iv) staying further proceedings until the order is obeyed;
> (v) dismissing the action or proceeding in whole or in part;
> (vi) rendering a default judgment against the disobedient party; or
> (vii) treating as contempt of court the failure to obey any order
> except an order to submit to a physical or mental examination.

Fed. R. Civ. P. 37(b)(2)(A). "Instead of or in addition to the orders above, the court must order

the disobedient party, the attorney advising that party, or both to pay the reasonable expenses,

including attorney's fees, caused by the failure, unless the failure was substantially justified or

other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C); see also

Transatlantic Bulk Shipping Ltd. v. Saudi Chartering, S.A., 112 F.R.D. 185, 189 (S.D.N.Y.

1986) (noting that Rule 37(b) "provides for sanctions where a party fails to honor its disclosure

obligations, especially after court orders"). Given that "compliance with discovery orders . . . is

necessary to the integrity of our judicial process . . . part[ies] who flout[] such orders do[] so at

[their] peril." Farmer v. Hyde Your Eyes Optical, Inc., No. 13 CV 6653, 2015 WL 2250592, at

*7 (S.D.N.Y. May 13, 2015) (quoting Update Art, Inc. v. Modiin Publ'g, Ltd., 843 F.2d 67, 73

(2d Cir. 1988))).

In deciding whether to impose Rule 37 sanctions, trial courts consider the following

factors:

> (1) the history of the failure to comply with court orders;
> (2) whether the party violating the order was given ample time to
> respond;

6

(3) the effectiveness of alternative sanctions;
(4) whether the noncomplying party was warned and given an
opportunity to argue against the impending sanction;
(5) the prejudice to the adversary caused by the failure to comply;
(6) whether the documents at issue would normally be readily
obtainable; and
(7) the extent of the party's personal responsibility.

Wilson v. Austin, No. 11 CV 4594, 2013 WL 3226769, at *6-7 (E.D.N.Y. June 25, 2013) (citing

Burke v. ITT Auto., Inc., 139 F.R.D. 24, 34 (W.D.N.Y 1991)).

### B. Defendant's Motion for Sanctions

Defendant seeks sanctions against plaintiff based on plaintiff's alleged failures to comply

with its discovery obligations and Court Orders.  Plaintiff's alleged discovery violations can be

grouped into three categories:  1) the failure to reference specific documents responsive to

defendant's Document Requests 19[10] through 24; 2) the failure to produce so-called "warehouse

documents" that the Court previously Ordered plaintiff to produce; and 3) the failure to provide

specific responses to interrogatories seeking itemized computations of plaintiff's damages

claims.[11]  Based on these alleged violations of plaintiff's discovery obligations, defendant seeks

---

[10]While defendant claims that it seeks sanctions based on plaintiff's alleged failure to
comply with Document Requests 18 through 24, it only refers to and discusses Document
Requests 19 through 24 elsewhere in its submission.  (Compare 2/6/17 Def.'s Ltr. at 2, with id. at
5-6).

[11]Defendant claims that plaintiff violated its discovery obligations in a number of
additional ways, including completely failing to respond some of defendant's document requests.
(See 1/20/17 Def.'s Ltr. at 2).  However, because the sanctions defendant seeks are based solely
on plaintiff's alleged violations as described above (see 2/6/17 Def.'s Ltr. at 2), the Court limits
its discussion to those alleged violations for which defendant seeks sanctions.

an Order:  1) requiring plaintiff to respond to defendant's Document Requests 19 through 24 by

providing all demanded documents, including "warehouse documents," Bates stamped and

provided with specific references to documents that are responsive to each of defendant's

requests; 2) requiring plaintiff to respond to Interrogatories 2 through 5 and provide an itemized

list of all billings processed by defendant that plaintiff claims constitute its $7 million in claimed

damages, with specific references as to what defendant did improperly with respect to each

improper billing, sworn to by an officer of plaintiff; 3) dismissing the action; and/or 4) awarding

defendant its attorneys' fees and costs incurred in pursuing this motion.  (2/6/17 Def.'s Ltr. at 2).

### 1)  Plaintiff's Failure to Respond to Document Requests 19 to 24

Defendant claims that plaintiff failed to provide references to specific documents or pages

responsive to defendant's Document Requests 19 to 24, instead referring defendant to plaintiff's

responses to other requests, which identify "a number of folders" of documents, totaling more

than 2,000 pages of material, without specifying which documents within those folders are

responsive to defendant's requests.  (2/6/17 Def.'s Ltr. at 5-6).  Defendant also notes that the

documents to which plaintiff refers are not Bates stamped.  (Id.)

Rule 34 of the Federal Rules of Civil Procedure provides that, in responding to requests

for production of documents, the responding party must "produce documents as they are kept in

the usual course of business or must organize and label them to correspond to the categories in

the request."  Fed. R. Civ. P. 34(b)(2)(E)(I).  The provision "prohibits 'simply dumping large

quantities of unrequested materials onto the discovering party along with the items actually

8

sought.'" SEC v. Collins & Aikman Corp., 256 F.R.D. 403, 410 (S.D.N.Y. 2009) (quoting 8A

Charles Alan Wright, Arthur R. Miller, and Richard L. Marcus, Federal Practice & Procedure,

§ 2213 (2008)). Thus, courts "routinely 'require responding parties to provide documents in

some kind of organized, indexed fashion rather than as a mass of undifferentiated, unlabeled

documents.'" Rahman v. The Smith & Wollensky Rest. Grp., Inc., No. 06 CV 6198, 2009 WL

773344, at *4 (S.D.N.Y. Mar. 18, 2009) (quoting Sparton Corp. v. United States, 77 Fed. Cl. 10,

16 (Fed. Cl. 2007)). Accordingly, where documents produced "were not organized and labeled

to correspond to the categories specified in" the document requests in response to which the

documents were produced, courts have directed the producing party to re-produce the documents,

Bates-stamped, with an "itemized list which sets forth, by [B]ates-number, the documents

responsive to each of the requests." Ng v. HSBC Mortg. Corp., No. 07 CV 5434, 2009 WL

205048, at *3 (E.D.N.Y. Jan. 27, 2009); see also Mee Jin-Jo v. JPMC Specialty Mortg. LLC, No.

08 CV 230, 2011 WL 1198133, at *2 (W.D.N.Y. Mar. 29, 2011) (instructing a party to produce

documents responsive to documents requests and to "specifically identify which documents are

responsive to each of these requests").

     In its initial submission seeking sanctions, defendant claimed that plaintiff "fail[ed] to

identify responsive documents to each demand in accord with FRCP Rule 34(E)(I)." (1/20/17

Def.'s Ltr. at 2). Plaintiff did not specifically respond to this claim; however, plaintiff listed the

dates and contents of the discovery materials it provided to defendant, including a production of

thousands of pages of documents which were provided on July 18, 2016. (1/27/17 Pl.'s Ltr. at 1-

3). While plaintiff concedes that the documents were not Bates numbered, plaintiff notes that it

9

organized many of the documents in folders, such as "Document A (173 pgs)," "Document C (653 pgs)," and "Document Q (650 pgs)."[12] (Id. at 2, n. 3). Additionally, plaintiff claims that it offered to Bates stamp its July 18, 2016 production and re-send it, but alleges that defendant did not respond to plaintiff's offer. (Id.) Plaintiff claims that it "did not undertake to dump thousands of documents on [defendant] and mask critical information." (Id. at 2).

Defendant refers the Court to its Document Requests 19 through 24, which it claims "target [plaintiff's] damage claim." (2/6/17 Def.'s Ltr. at 5-6; see also id., Ex. I at 9). For example, Document Request 19 seeks "[a]ll documents which identify the particular insurance claims that were allegedly improperly submitted and monitored by Defendant, specifically the particular patient insurance claim information including value of the claim." (Id. at 5 (emphasis in original)). Document Request 23 seeks "[a]ll documents which identify the particular insurance claims that were allegedly improperly submitted and monitored by Defendant, specifically the information as to the denial of the specific patient insurance claim including the basis for the denial." (Id. (emphasis in original)). Document Request 24 seeks "[a]ll documents which identify the particular insurance claims that were allegedly improperly submitted and monitored by Defendant, specifically the steps taken by the Plaintiff and/or Defendant to address the deficiencies of the specific patient insurance claim." (Id. (emphasis in original)).

---

[12]While plaintiff refers to these as "documents," according to defendant, each "document" is actually a folder of documents. (See 2/6/17 Def.'s Ltr. at 5). Neither party has provided the Court with an example of one of these "documents" produced by plaintiff. However, given that plaintiff has not disputed defendant's referral to these materials as "folders," the Court refers to these materials as such.

Defendant claims that, instead of "clearly providing a direct reference to specific document[s], [plaintiff] simply listed a number of folders identified in responses to other demands, and simply provided without any reference as to how a particular folder answers which demand." (Id.)  Defendant further notes that the documents produced were not Bates stamped. (Id. at 5-6 (citing id., Exs. H, J)).  Instead, plaintiff's responses to Document Requests 19 through 24 were identical to its response to Document Request 18, which stated, "Objection, duplicitious and within defendants['] possession; notwithstanding same see response to # '7' and '40.'" (Id. at 6 (citing id., Ex. H at 5)).

Although plaintiff's responses to Requests 19 through 24 all refer to the responses to Requests 7 and 40, defendant argues that the requests sought different information and should have resulted in the production of at lease some different groups of documents.  Defendant notes that Document Requests 7 and 40 do not seek information about plaintiff's damages claims, but rather seek documents related to plaintiff's compliance with its contractual obligations and its mitigation of damages.  (Id.)  Specifically, Document Request 7 seeks "[a]ll documents evidencing or demonstrating Plaintiff's compliance with Section 2 of the 2007 Agreement regarding Plaintiff entering all patient referral data into the Home Care Management System," and Document Request 40 requests "[a]ll documents which evidence or involve any efforts, to mitigate, lessen, reduce or otherwise limit Plaintiff's damages, including any steps or actions considered whether or not they were undertaken." (Id., Ex. I at 7, 11).

Moreover, plaintiff's response to Document Request 7 was:

> Objection duplicitous, not reasonably available, and within

11

> defendant's possession, notwithstanding same, see "Document A"
> (173 pgs), "Document B" (302 pgs), "Document C" (652 pgs),
> "Document D" (40 pgs), "Document E" (23 pgs), "Document F"
> (100 pgs), "Document G" (22 pgs), "Document H" (65 pgs),
> "Document I" (54 pgs), "Document J" (24 pgs), "Document K"
> (215 pgs), "Document L" (65 pgs), "Document M" (604 pgs),
> "Document N" (188 pgs), "Document O" (45 pgs), "Document P"
> (48 pgs), "Document Q" (650 pgs), "Document R" (8 pgs),
> "Document S" (6 pgs).

(Id., Ex. H at 4).  Plaintiff's response to Document 40 similarly consisted of, "Objection, lacks

specificity, vague and overbroad; notwithstanding same, see 'Document V' (4 pgs), 'Document

W' (2 pgs), 'Document X' (1 pg), 'Document Y' (2 pgs)."  (Id., Ex. H at 7).  According to

defendant, a review of the folders of documents referenced in plaintiff's responses to Document

Requests 7 and 40 do not "permit one to truly understand exactly what information is responsive

to a particular demand."  (Id. at 6).

Accordingly, defendant appears to take the position that because Requests 7 and 40

sought information about plaintiff's "contractual obligations and mitigation of damages,"

respectively, while Requests 19 through 24 "target [plaintiff's] damage claim," plaintiff's

responses to those requests should not have been identical and the fact that the responses were

identical demonstrates that plaintiff did not undertake to provide a specific list of documents that

were responsive to each document request.  (Id. at 6).

Defendant argues that, because plaintiff did not produce documents as they are kept in the

ordinary course of business, plaintiff was required to produce documents in a "usable form,"

which defendant contends meant organizing and labeling them to correspond to the particular

requests that they were responsive to.  (Id.)  Defendant refers the Court to the decision in

12

National Iron Ore Co. v. Ralph M. Parsons Co., which defendant contends "explain[s] just why

proper document production is so important:"

> Defendants are not required, in furtherance of their own legitimate
> pre-trial discovery, to pore through a vast amount of documents,
> and hazard their own opinions at which documents plaintiff
> contends relate to which factual claim. Defendants are entitled to a
> specific designation by plaintiff of which documents relate to
> which claim or claims (in view of the broad allegations of the
> complaint, there will undoubtedly be some overlapping).
> Defendants cannot fairly be denied this clarification on the theory
> that it constitutes their trial preparation. Defendants are entitled,
> by pre-trial discovery, to sharpen the focus of what the plaintiff's
> claims are, and which documents relate to those claims.
> Undoubtedly defendants' trial preparation will be assisted by such
> discovery, but that is after all one of the functions of the discovery
> rules.

(Id. at 6-7 (quoting National Iron Ore Co. v. Ralph M. Parsons Co., No. 76 CV 703, 1979 U.S.

Dist. LEXIS 14192, at *4-5 (S.D.N.Y. Feb. 26, 1979))).

　　　To the extent that plaintiff has claimed that it "simply cannot readily identify the

demanded documents," defendant refers the Court to a recent Department of Health and Human

Services Office of Inspector General Medicare Compliance Review of plaintiff, which allegedly

"evidences [that plaintiff] does have the ability to provide specific details on each[] [c]laim." (Id.

at 7 (citing id., Ex. K)). For example, in response to inquiries from the Department of Health and

Human Services Office of Inspector General, defendant notes that plaintiff responded with

specific information from specific billing samples. (Id. (citing id., Ex. K)). Accordingly,

defendant argues that plaintiff has the ability to identify which documents are responsive to each

of defendant's requests. (Id.) Finally, defendant notes that it "has even gone so far as to provide

[plaintiff] instructions on how [plaintiff] can produce detailed reports from its computer systems."  (Id. (citing id., Ex. L)).

Plaintiff responds that it complied with discovery by "serving thousands of documents and emails" on defendant, and that it further complied with defendant's August 12, 2016 Notice of Deficiency on January 13, 2017, which plaintiff claims defendant accepted "without rejection."  (2/13/17 Pl.'s Ltr. at 1).[13]  Plaintiff further claims that defendant "did not dispute" the list it provided in its January 27, 2017 letter to the Court which provided the documents it produced in response to defendant's discovery requests.  (Id. at 2 (citing 1/27/17 Pl.'s Ltr. at 1-3)).  Plaintiff contends that it has complied with its discovery obligations because it produced outstanding discovery responses on January 13, 2017, which defendant allegedly accepted without any indication that the responses were deficient in any way.  (Id.)

As to defendant's specific contention that plaintiff should be required to provide a list of specific materials within its document productions that are responsive to defendant's Document Requests 19 through 24, plaintiff claims that between July 18, 2016 and February 6, 2017, defendant did not advise plaintiff that the documents it received were not in a "usable form."  (Id.

---

[13]The Court notes that, while plaintiff refers to a January 13, 2017 response to a Notice of Deficiency received from defendant, plaintiff did not provide the materials to the Court for review.  While plaintiff claims that the materials are "not attached due to the voluminous nature of same" and were available for the Court's review (2/13/17 Pl.'s Ltr. at 1 n.1), it was plaintiff's responsibility to provide the Court with any relevant materials in its response to defendant's motion for sanctions.  The Court further notes that defendant's submissions to the Court were voluminous and included correspondence between the parties throughout discovery but do not make any reference to any January 13, 2017 submission, and defendant claims that it never received a January 13 correspondence.  (See 2/13/17 Def.'s Ltr. at 4 n.2).

14

at 4). Rather, plaintiff claims that the files it produced were "all labeled clearly, and provided in formats which are maintained by [plaintiff] and accessible and useable by any computer's operating program." (Id.) Thus, plaintiff's position is that its responses to these requests are complete.

As an initial matter, defendant raised its concerns about plaintiff's responses to Document Requests 19 through 24 as early as August 12, 2016, when defendant sent a letter to plaintiff stating that "FGA's document demand numbers 15-24 requested documentation regarding insurance claims submitted by FGA to various providers and/or insurers. Rather than identifying specific documentation, EHCS makes a blanket reference to 22 documents, Documents A-S and V-X." (1/20/17 Def.'s Ltr., Ex. A at 1 (emphasis added)). On December 5, 2016, defendant's counsel sent an email to plaintiff's counsel, explaining that "as outlined in our letter of August 12, 2016 and requested in recent emails, there are a number of deficient document responses from EHCS. This includes FGA document demand numbers 15-24 which sought specific documentation regarding insurance claims submitted by FGA to various providers and/or insurers. Please advise when these certain responsive documents will be produced." (2/6/17 Def.'s Ltr., Ex. Q at 4). Thus, whether or not defendant articulated its specific concerns about plaintiff's responses to these requests in the exact manner that it does now, defendant did indeed raise these concerns to plaintiff earlier during the course of discovery.

Moreover, while plaintiff makes much of the fact that it provided "thousands" of responsive documents in a format that was readable on computers (see 2/13/17 Pl.'s Ltr. at 1, 4), its production of emails, which plaintiff concedes were not Bates stamped (see 1/27/17 Pl.'s Ltr.

15

at 2 n.3; see also 2/6/17 Def.'s Ltr. at 7), violated the parties' electronic discovery protocol, which expressly required that all electronic discovery be produced with "'Bates-Number' page-level control number endorsements on the images." (ESI Protocol[14] ¶ 8.C).

Bates stamping documents – or marking documents with a unique identification number – is commonplace in discovery in federal court, both for electronically and non-electronically stored information, because it aids in identifying specific materials not only to each other but also to the Court. For example, when a party produces documents in response to discovery requests, the responding party must identify specific documents that are responsive to each request in order to prevent "document dumps" (see supra at 8-9); this is generally done by reference to documents identified by Bates numbers.

Indeed, plaintiff's responses to defendant's document requests demonstrate the importance of Bates numbering. Plaintiff's responses to Document Requests 19 through 24 each refer defendant to its responses to Document Requests 7 and 40, which in turn refer to twenty-three (23) folders of documents, consisting of over 2,000 pages of material. (See 2/6/17 Def.'s Ltr., Ex. H at 4, 5, 7). Given that Requests 19 through 24 focused on plaintiff's damages calculations while Requests 7 and 40 were aimed at information regarding plaintiff's compliance with its agreement with defendant and its mitigation of its damages, respectively, it is exceedingly unlikely that each of the 2,000 pages of materials referred to in plaintiff's document responses were responsive to each of Requests 7, 19 through 24, and 40.

---

[14]Citations to "ESI Protocol" refer to the Stipulation and Order Establishing Protocol for the Production of Electronically Stored Information, entered by the Court on July 28, 2017.

Accordingly, plaintiff failed to comply with its discovery obligations under Rule 34 by

failing to indicate which documents were responsive to Document Requests 19 through 24 with

sufficient specificity.  Plaintiff also did not comply with the agreed-upon protocol for electronic

discovery in that it failed to Bates stamp electronically stored information.   Therefore, the Court

Orders plaintiff to:  1) re-produce any electronically stored information with proper Bates stamps;

and 2) supplement its responses to each of defendant's document requests, not limited to

Requests 19 through 24, listing with specificity which documents are responsive to each request.

Thus, if only three (3) pages are responsive to a particular request within the 653-page folder

entitled "Exhibit C," plaintiff is required to indicate to defendant which three pages within the

folder are responsive to defendant's requests.  To facilitate this process, plaintiff may re-produce

the folders it has already produced with Bates numbers.  If plaintiff fails to comply with this

Order by July 20, 2017, the Court may recommend to the district court that plaintiff be precluded

from using any documents not specifically listed in response to defendant's document requests at

trial.


### 2)  Plaintiff's Alleged Failure to Produce "Warehouse Documents"

Defendant claims that plaintiff has failed to produce so-called "warehouse documents,"

which apparently are documents located within plaintiff's warehouse.  (See 1/20/17 Def.'s Ltr.,

Ex. B at 2 (referring to "paper documents in the warehouse"); 1/27/17 Pl.'s Ltr. at 2 n.1 (quoting

an email from plaintiff's counsel referring to a "list of over 22,000 relevant patients whose charts

are stored at the warehouse")).

On June 15, 2016, the Court directed plaintiff to "produce (1) Bates stamped copies of documents in warehouse . . . within 30 days." (2/6/17 Def.'s Ltr., Ex. F).  On July 14, 2016, instead of producing the documents as Ordered, plaintiff wrote a letter to defendant attaching a list of the 22,000 patients whose files were stored in the warehouse and indicating that, for each patient, there are an average of approximately 200 pages of documents in their files.  (Id., Ex. P). Plaintiff asked defendant whether its position was that plaintiff should produce all of the documents and noted that defendant had never examined those documents during the course of rendering services to plaintiff.  (Id.)  Plaintiff explained that it was willing to produce all of these warehouse documents but that "the parties have to resolve the logistics, including transmission and collection, of same."  (Id.)  On September 8, 2016, defendant's counsel, by email, informed plaintiff that it was only "interested in the documentation that supports the claims asserted by plaintiff."  (Id., Ex. Q at 1).

Plaintiff acknowledges that it has not produced those documents to defendant.  (1/27/17 Pl.'s Ltr. at 3).  However, plaintiff claims that it has offered defendant access to review those documents in the warehouse but that defendant has "uniquely not sought on its own volition despite numerous offers from" plaintiff to arrange to review them.  (Id.)  According to plaintiff, the "warehouse documents" consist of patient charts and files, which defendant has "never, not once, required access to . . . throughout the scope of its services to [plaintiff] as it is utterly unnecessary."  (Id.)

Defendant claims that plaintiff "apparently never undertook any effort to determine if there were documents responsive to [defendant's] demands" within these warehouse files, and, in

failing to produce relevant warehouse documents, violated the Court's Order requiring plaintiff to produce them.  (2/6/17 Def.'s Ltr. at 8, Ex. F).

Plaintiff responds that defendant's attorneys "declined to access [the warehouse documents] despite the numerous documented efforts from the undersigned."  (2/13/17 Pl.'s Ltr. at 4).  Indeed, plaintiff claims that "[i]t is undisputed that [defendant's] counsel has both in action and direct communication evidenced its intent not to access the warehouse documents."  (Id. at 5-6 (citing 2/6/17 Def.'s Ltr., Ex. Q at 1)).  Plaintiff also argues that it has "done significantly more than merely advise [defendant] that access was available to the documents, including attempting to figure out logistical information as to transport which [defendant] ignored."  (Id. at 6).  Plaintiff refers the Court to its letter to defendant, which indicated that based on its review, there were documents for more than 22,000 patients in the warehouse and asked whether defendant's position was that documents for all such patients should be produced.  (Id. (citing 2/6/17 Def.'s Ltr., Ex. P)).  According to plaintiff, defendant's counsel "communicated both via telephone and email that [defendant] was not seeking the warehouse documents, and was only interested in information relating to [plaintiff's] damages which would not be served by examining patient charts."  (Id.)

Additionally, plaintiff claims that because defendant did not raise the issue of the warehouse documents in a joint status report filed on December 12, 2016, defendant should be estopped from further seeking the warehouse documents.  (Id. at 6-7 (citing Status Report[15])).

_____

[15]Citations to "Status Report" refer to the Joint Status Report, filed on December 12, 2016.

Accordingly, plaintiff claims that because the warehouse documents consist of patient charts and files that are irrelevant and defendant has not sought access to them, plaintiff should not be sanctioned for its failure to produce them. (Id. at 7).

The Court rejects plaintiff's contention that because defendant did not raise the issue of the warehouse documents in the parties' joint status report filed in December, defendant should be estopped from seeking sanctions based on plaintiff's failure to produce them. The Court previously Ordered plaintiff to produce the documents, which it did not. Nor did plaintiff seek reconsideration of the Order or explain to the Court that the documents were irrelevant and burdensome to produce. Accordingly, the Court may sanction plaintiff for failing to comply with a Court Order, even if defendant did not raise the issue in a subsequent filing with the Court. If anything, plaintiff should have raised the problems associated with compliance prior to the instant motion for sanctions. By not raising these issues, plaintiff may be found to have waived any objection to producing the "warehouse documents."

Based on the parties' submissions and the Court's familiarity with the case, it appears that defendant is interested in the warehouse documents only to the extent that they are relevant to the $7 million in damages plaintiff is claiming. To the extent plaintiff will seek to establish its damages at trial using any documents from the warehouse, plaintiff must produce them. Indeed, such documents should have been produced by plaintiff in its initial disclosures. See Fed. R. Civ. P. 16(a)(1)(A)(ii), (iii).

Finally, while plaintiff emphasizes that it offered defendant the ability to inspect the warehouse for itself, plaintiff is not permitted to shift its own discovery obligations onto the

20

defendant by requiring it to search for documents within plaintiff's possession, custody, or control that are responsive to defendant's document requests. Thus, the argument that plaintiff gave defendant the chance to inspect the records itself is no justification for plaintiff's failure to provide the responsive warehouse documents to defendant.

Accordingly, the Court finds that plaintiff violated its discovery obligations and this Court's June 16, 2016 Order by failing to produce any documents from its warehouse that are relevant either to its damages calculations or to defendant's document requests. Moreover, as discussed above, irrespective of the current Order, plaintiff will not be permitted to introduce at trial any evidence not disclosed during discovery.

Therefore, to the extent that plaintiff seeks to use any documents from its warehouse to establish defendant's liability or plaintiff's damages, or that any documents from the warehouse are responsive to defendant's document requests, plaintiff is Ordered to produce those documents by July 20, 2017. Offering to permit defendant's counsel to inspect the warehouse will not suffice; plaintiff must undertake to review and produce any relevant materials on its own. Any materials that are produced must be Bates stamped. If plaintiff fails to comply with this Order, the Court may recommend further sanctions, such as an order of preclusion or adverse inference.

### 3) Plaintiff's Failure to Respond to Interrogatories

Defendant claims that plaintiff failed to properly respond to supplemental interrogatories served on February 18, 2016. (2/6/17 Def.'s Ltr. at 3).

A party may serve upon an adversary interrogatories relating to "any matter that may be

inquired into under Rule 26(b)." Fed. R. Civ. P. 33(a)(2). Among the permissible uses of interrogatories is seeking clarification on a party's claim for damages. See John B. Hull, Inc. v. Waterbury Petroleum Prods., Inc., 845 F.2d 1172, 1176 (2d Cir. 1988).

Defendant refers the Court to the John B. Hull, Inc. v. Waterbury Petroleum Products, Inc. case, which it contends "in this very context [] upheld the imposition of Rule 37 sanctions." (2/6/17 Def.'s Ltr. at 4-5 (citing 845 F.2d at 1176)). There, the plaintiff propounded interrogatories requesting that the defendant "break down its damage claims, provide its theories of causation, specify how it calculated those damages, identify the documents relied on to calculate the damages, [and] identify the documents containing its calculations," among other things. Id. Despite the district court ordering the defendant to provide specific responses to these interrogatories, the defendant did not provide adequate responses. Id. Accordingly, the district court sanctioned the defendant. Id. The Second Circuit, recognizing that these questions were "clearly [] proper request[s]," upheld the sanctions based on the defendant's insufficient responses, which stated that "the amount of damages and the other requested information was set forth in other documents. . . . It did not state how the amount was calculated, break down the damages into their components, nor identify the documents relied on in calculating damages." Id.

Defendant contends that, because plaintiff provided responses similar to those for which sanctions were imposed in John B. Hull, plaintiff should be "compelled to provide a detailed itemization how it calculates damages it claims, or its complaint should be dismissed outright." (Id. at 5). It argues that it "cannot and should not, therefore, be prejudiced by being forced to

22

guess what damage theory and liability it must defend against."  (Id.)

Defendant argues that plaintiff failed to sufficiently answer Supplemental Interrogatories 2 through 5, which asked plaintiff to do the following:

> 2.  Provide an itemized computation of each category of damages which the Plaintiff seeks to recover in this action and Identify Any Document(s) which the Plaintiff contends support(s) this calculation of alleged damages.
> 3.  Provide an itemized computation of the alleged breach of the 2007 Agreement.
> 4.  Provide an itemized computation of the alleged damage to ECHS' reputation and business caused by FGA as alleged in the Complaint.
> 5.  Provide an itemized computation of how Plaintiff determined the alleged sum of $7,000,000.00 in damages sought from FGA as alleged in the Complaint.

(Id., Ex. G at 4).

In response to Supplemental Interrogatory 2, plaintiff answered:

> 2.      Count I,        $7,000,000.00
>         Count II,       $7,000,000.00
>         Count III,      $7,000,000.00
>         See, documents produced in response to Document Demands # "1.", "7.", "40.", "49." and forthcoming (including response to Document Demand # "39."). The documents produced demonstrate claims losses, additional and other costs incurred, incidental damages, and consequential damages, including but not limited to charges and expenses incurred for recovery, and loss of potential income.  All damages to be finalized upon receipt of discovery responses from defendant.

(Id., Ex. H at 2-3).  Plaintiff's responses to Supplemental Interrogatories 3, 4, and 5 were, "Objection, duplicitous."  (Id., Ex. H at 3).

According to defendant, courts frequently sanction parties based on "bare responses" to

interrogatories similar to those provided by plaintiff in the instant case.  (Id. at 4 (citing Cine Forty-Second St. Theatre Corp. v. Allied Artists Pictures Corp., 602 F.2d 1062, 1064 (2d Cir. 1979); Paige v. LaCoste, No. 10 CV 3356, 2014 U.S. Dist. LEXIS 137722, at *11 (E.D.N.Y. May 8, 2014), report and recommendation adopted, 2014 U.S. Dist. LEXIS 136555 (E.D.N.Y. Sept. 22, 2014))).  Defendant contends that "interrogatory answers are uniquely useful because they are an admission by a party" and "serve to lock-in a respondent's answers and may be used in the future to test that respondent's credibility at trial," but argues that plaintiff's answers – which provide only a lump-sum amount and "improperly refer[] to documents in a wholesale fashion" – fail to provide such usefulness.  (Id. (citing Sheehy v. Ridge Tool Co., No. 05 CV 1614, 2007 WL 1020742, at *2 (D. Conn. Apr. 2, 2007))).

Plaintiff contends that it has produced all documents and information that it has been able to collect that evidence its claim that defendant "did not bill, failed to bill timely, submitted as 'tests' instead of actual bills, falsely listed as 'paid' although they were unpaid, and etc." (2/13/17 Pl.'s Ltr. at 3).  It claims that this information was provided in Excel format, and that its original responses were supplemented in its January 13, 2017 responses with "specific monetary amounts."  (Id.)[16]  Moreover, plaintiff alleges that some of the information is within defendant's sole possession, because the contract between the parties provides that it was defendant's obligation to maintain the records defendant now seeks.  (Id. at 3-4, n. 4).

---

[16]Plaintiff has not provided the Court with evidence of its January 13, 2017 submission or the contents thereof, and defendant claims that it never received one. (2/13/17 Def.'s Ltr. at 4 n.2; see also supra note 13).

Notwithstanding plaintiff's claims that it has produced documents evidencing its damages, it is still required to respond to defendant's interrogatories, asking it to explain its damages calculations and refer defendant to specific documents that support its damages claims. See John B. Hull, Inc. v. Waterbury Petroleum Products, Inc. 845 F.2d at 1176. Accordingly, by July 20, 2017, plaintiff is Ordered to respond to defendant's Special Interrogatories 2 through 5, including by providing "itemized computation[s]" of its damages claims as requested by the interrogatories. (See 2/6/17 Def.'s Ltr., Ex. G at 4). To the extent plaintiff seeks to reference specific documents from its document productions in explaining its specific damages claims, it must reference specific pages of material – it may not simply refer to, for example, "Document C" without also referring to specific documents or pages within "Document C" that are relevant. Failure to comply with this Order may result in a recommendation of sanctions including, but not limited to: 1) an Order of preclusion prohibiting plaintiff from presenting evidence of damages not specifically referred to in its interrogatory responses at trial; 2) striking the Complaint in whole or in part; and/or 3) dismissing plaintiff's claims. See Fed. R. Civ. P. 37(b)(2)(A).

In addition, because plaintiff violated the Court's Orders by failing to Bates stamp emails it produced (ESI Protocol ¶ 8.C) and by failing to produce the "warehouse documents" (2/6/17 Def.'s Ltr., Ex. F), the Court Orders plaintiff to pay defendant's reasonable attorneys' fees and costs in filing the instant motion. See Fed. R. Civ. P. 37(b)(2)(C). By July 7, 2017, defendant is directed to file an application for fees, including the number of hours for which compensation is sought, the proposed rate, and billing records supporting the application.

C. Plaintiff's Motion for Sanctions

Plaintiff claims that defendant has violated its discovery obligations and that sanctions are warranted. (1/27/17 Pl.'s Ltr. at 3-6). Specifically, plaintiff alleges that defendant failed to completely respond to interrogatories, that defendant failed to timely respond to document requests, and that, even when defendant responded to plaintiff's document requests, the responses were incomplete and inaccessible to plaintiff. (Id.) The Court addresses each alleged deficiency in turn.[17]

1) Defendant's Responses to Interrogatories

According to plaintiff, it served interrogatories on defendant on May 1, 2015. (1/27/17 Pl.'s Ltr. at 3). However, it claims that defendant's responses, which were provided on June 9, 2015, did not provide any responses other than objections. (Id.)

Defendant responds that plaintiff's January 27, 2017 letter represents the first time plaintiff has raised any concerns about defendant's interrogatory responses, but nevertheless

---

[17]The Court notes that plaintiff submitted arguments in further support of its motion for sanctions on February 13, 2017. (See 2/13/17 Pl.'s Ltr. at 7-8). However, plaintiff's submission was untimely, given that the Court had permitted the parties to "supplement the papers already filed with the Court by February 6, 2017. They may respond to their adversary's papers by February 13, 2017." (Order dated January 31, 2017 at 2 (emphasis in original)). By failing to supplement its papers by the February 6, 2017 deadline set by the Court, plaintiff deprived defendant of the ability to respond to the arguments presented in plaintiff's February 13, 2017 submission. Accordingly, the Court does not consider the arguments made in plaintiff's February 13, 2017 submission pertaining to plaintiff's motion for sanctions. However, even if it had considered those arguments, the Court would have reached the same decision on plaintiff's motion for sanctions.

argues that "a cursory review of [defendant's] response to interrogatories readily reveals [defendant] responded to and raised appropriate objections." (2/13/17 Def.'s Ltr. at 4; see also id., Ex. P).

Indeed, a review of defendant's interrogatory responses reveals that while it did lodge a number of general and specific objections to plaintiff's interrogatories, it provided specific responses to many of the interrogatories. (See id., Ex. P). For example, in response to plaintiff's request that defendant identify all documents relied upon or reviewed by defendant's experts or attorneys in connection with this case, defendant objected to the extent that it sought information covered by the work-product privilege but answered that "[d]efendant has not yet retained an expert." (Id. at 5). As to plaintiff's request that defendant identify those who "participated or assisted in preparing or supplying" information respecting or answers to interrogatories, defendant answered, "Frank Giannantonio and John Morris of FGA." (Id. at 4).

To the extent that defendant objected and did not otherwise respond to specific interrogatories, plaintiff has not explained why defendant's objections were improper, nor has plaintiff explained why the responses defendant did provide were inadequate. Indeed, according to defendant, defendant provided its responses nearly two (2) years ago (2/13/17 Def.'s Ltr. at 4), and plaintiff never advised defendant of such concerns until now.

Accordingly, given that plaintiff has not explained why defendant's responses were insufficient nor has plaintiff given defendant an opportunity to cure any deficiencies before seeking sanctions, the Court finds no basis upon which to sanction defendant for any purported deficiencies in its responses to plaintiff's interrogatories. To the extent plaintiff believes that

27

defendant's nearly two-year old responses are deficient, it is directed to meet and confer with defendant and specifically identify any deficiencies in defendant's interrogatory responses.

### 2) Timeliness of Defendant's Responses to Document Requests

Plaintiff claims that it served document requests on defendant on February 19, 2016 and that the parties agreed that responses would be provided by March 25, 2016. (1/27/17 Pl.'s Ltr. at 3-4). According to plaintiff, defendant "ignored" the March 25, 2016 deadline and instead responded on May 26, 2016. (Id.) Plaintiff further claims that defendant's responses to plaintiff's document requests were deficient in that defendant did not produce "a single responsive document," which the Court addresses infra at 31-35. (Id. at 4). According to plaintiff, defendant "continued to ignore [plaintiff's] demands" and did not provide any further responses to document requests until October 26, 2016. (Id.) Even when it received defendant's production, plaintiff claims that the documents were inaccessible on its computers and "were required to be sent out." (Id.)

In response, defendant argues that plaintiff "omits [its] own fault in being responsible for such delays." (2/13/17 Def.'s Ltr. at 2). With respect to the March 25, 2016 deadline to respond to document requests, defendant claims that plaintiff did not serve defendant with its discovery demands until April 27, 2016, such that its responses on May 26, 2016 – thirty (30) days after they were served – were timely. (Id.) Indeed, while plaintiff's discovery demands were dated February 19, 2016 (see id., Ex. D at 17), defendant's counsel emailed plaintiff's counsel on April 19, 2016, explaining that defendant "has not received formal discovery demands" and plaintiff's

28

counsel responded that they would, "of course, stipulate to allowing [defendant][18] to respond 30 days from the date of receipt." (Id., Ex. C at 2).

With respect to defendant's supplemental responses allegedly not being filed until October 26, 2016, defendant notes that because of Health Insurance Portability and Accountability Act ("HIPAA") concerns, it sought a protective order before producing documents that may have implicated HIPAA. (2/13/17 Def.'s Ltr. at 2-3). However, according to defendant, plaintiff did not respond regarding the request for a protective order or an electronic discovery protocol. (Id. at 3, Ex. F). Indeed, on June 15, 2016, the Court ordered plaintiff to "execute [a] protective order and return to defense counsel." (Id., Ex. G). Despite this Court's Order, defendant claims that plaintiff did not execute the protective order until August 1, 2016 (id., Ex. H), and the protective order was entered by the Court on August 16, 2016. (Id., Ex. I).

Pursuant to the protective order, before disclosing confidential materials to any party, the party receiving documents was required to sign and provide a "Notice of Adherence to Protective Order" to the producing party. (Id., Ex. I at 7). According to defendant, it requested that plaintiff execute such a Notice on several occasions (id., Ex. J), but plaintiff did not return the executed Notice until October 26, 2016. (Id., Ex. K). Defendant claims that it produced over 267,000 documents and supplemental responses to plaintiff's document requests that same day, upon receipt of the Notice of Adherence to Protective Order. (2/13/17 Def.'s Ltr. at 3, Ex. L). Thus,

---

[18]Plaintiff's counsel's email indicated his consent to stipulate to allowing "Plaintiff" to respond to document requests within thirty days of receipt. (2/13/17 Def.'s Ltr., Ex. C at 1). However, it is apparent from the context of the email that he intended to say "defendant."

defendant claims that

> FGA properly objected to production of HIPAA protected
> documents, and sought an immediate protective order. EHCS, as a
> medical services provider, of course, should have immediately
> recognized the need for that order. Instead, its ongoing delay
> required this Court's intervention. Again, EHCS' claims about
> FGA are betrayed by its own conduct.

(Id. at 3).

As to the format of defendant's production, defendant indicates that it informed plaintiff

that certain documents could be viewed using software in plaintiff's possession and that it

"provides step-by-step instructions on how [plaintiff] can locate requested information." (Id. at

4).

The Court finds that defendant did not act improperly or engage in sanctionable conduct

in the timing of its responses to plaintiff's discovery requests. With respect to its initial

responses that were provided on May 26, 2016, plaintiff consented to defendant responding

within thirty (30) days of receipt of plaintiff's document requests, which plaintiff does not

dispute were only received on April 27, 2016. (See 2/13/17 Def.'s Ltr., Ex. C at 2, Ex. E at 1).

As to defendant's supplemental responses that were provided on October 26, 2016, defendant

acted properly by declining to produce documents potentially covered by HIPAA until the parties

entered into a protective order and complied with its requirements. Indeed, on the day that

plaintiff provided the required "Notice of Adherence to Protective Order" as required by the

executed protective order, defendant produced responsive documents; this can hardly be

considered untimely or sanctionable. (See id., Exs. K, L). With respect to the format of

30

production, by producing electronically stored information on a program accessible by plaintiff, defendant satisfied its obligation to "produce it in a form in which it is ordinarily maintained or in a reasonably usable form or forms." Fed. R. Civ. P. 34(b)(2)(E)(ii). Indeed, the Court notes that plaintiff does not argue that, as of the date of its letter, that it was unable to access or review the documents produced by defendant in this format. (See 1/27/17 Pl.'s Ltr.).

Accordingly, the Court finds that defendant timely responded to plaintiff's document requests in a proper format and therefore declines to impose sanctions based on the dates or format of defendant's responses to plaintiff's discovery demands.

### 3) Alleged Deficiencies in Defendant's Production of Documents

Plaintiff claims that, even after defendant supplemented its discovery responses on October 26, 2016, its responses to plaintiff's document requests "continued to be deficient and [defendant] even admitted to same in its responses which were essentially identical" to its May 26, 2016 responses. (1/27/17 Pl.'s Ltr. at 4). As an example, plaintiff refers to the Court to defendant's responses to Demand 7, which sought certain records relating to Medicare and Medicaid claims. (Id.) In both its May 26, 2016 and October 26, 2016 responses, defendant responded that "FGA is in the process of retrieving these documents from storage so they may be scanned and provided upon request." (Id.; see also 2/13/17 Def.'s Ltr., Ex. E at 7-8, Ex. L at 7-8). Plaintiff claims that this response is "but an example of the outstanding discovery that [defendant] has admittedly withheld and continues to withhold" and that defendant has "now had nearly two years to retrieve the archived documents." (1/27/17 Pl.'s Ltr. at 4-5).

31

Additionally, plaintiff claims that defendant's discovery responses were "dumped" on plaintiff and "consisted of items evidencing liability buried within random submissions, including 'late filings' and 'write off' correspondence." (Id. at 5). According to plaintiff, the "write off" documents included the years 2006, 2011, and 2012, but documents for the years 2007, 2008, 2009, and 2010 were omitted, such that plaintiff "is unable to ascertain how much was written off between 2006 and 2011, and specifically how much of that was written off due to 'late filings.'" (Id.) Such information is important, according to plaintiff, because "late filings" reflect bills that defendant failed to timely file, and "access to the 2006-2011 period will further unequivocally demonstrate [defendant's] liability and failure to perform its duties pursuant to the parties' Agreement." (Id) Indeed, plaintiff refers to an email from one of defendant's employees, dated February 21, 2013, in which defendant purportedly "admitted that it was erroneously submitting claims as 'tests' rather than actual claims, which of course would not be paid." (Id.) Thus, plaintiff claims that, on January 6, 2017 and January 13, 2017, it provided formal Notices of Deficiency, in addition to "the numerous informal requests via email and telephone conferences," that defendant's responses were deficient. (Id. at 6, n.11). According to plaintiff, in lieu of responding to these Notices of Deficiency, defendant filed its own motion for sanctions. (Id. at 6).

With respect to defendant's responses to Demand 7, defendant claims that this was the "first time" plaintiff raised those concerns. (2/13/17 Def.'s Ltr. at 3). Defendant notes that, as to plaintiff's contention that defendant has had two years during which to obtain the requested documents, that claim represents "gross exaggeration" given that plaintiff served its document

32

requests on defendant on April 27, 2016. (Id.)  Moreover, defendant claims that the requested documents can be generated using plaintiff's computer system. (Id.)

As to the January 13, 2017 Notice of Deficiency that plaintiff claims to have provided defendant, defendant alleges that it has no record of ever receiving such a Notice. (Id. at 4 n.2; see also supra note 13).  Nevertheless, defendant claims that plaintiff raised three areas of alleged deficiencies in its January 6, 2017 Notice of Deficiency, which defendant responded to on January 20, 2017. (See id., Exs. N, O).  First, plaintiff alleged that defendant had not produced "write off" correspondence for the years 2007, 2008, 2009, and 2010, and had produced incomplete correspondence for 2006, 2011, and 2012. (Id., Ex. N).  Defendant responded by referring plaintiff to specific documents, by Bates number, that represented the "write off" correspondence for the allegedly missing years. (Id., Ex. O at 1).  Next, plaintiff alleged that defendant failed to produce documents "relating to claims that were denied due to 'late filings.'" (Id., Ex. N).  Defendant responded that plaintiff's document requests did not include a request for such documents, but referred plaintiff to defendant's responses to Demands 14 and 15 and provided specific Bates numbers of materials that would be responsive to such a request. (Id., Ex. O at 1-2).  Finally, plaintiff indicated that defendant's responses "do not correspond to the demands" and asked defendant to "furnish a list, spreadsheet, or other document that identifies the bates numbers that are responsive to each demand." (Id., Ex. N).  Defendant responded by referring plaintiff to its document responses of October 26, 2016, claiming that its response to each document request "has a corresponding response, identified by the relevant document bates number." (Id., Ex. O at 2).  Defendant further noted that plaintiff's responses to defendant's

33

document requests "did not even provide bates stamp references." (Id.)

Accordingly, defendant argues that, "even if [plaintiff] had a colorable argument that [defendant's] production was incomplete, which [defendant] strenuously denies, [defendant's] production of over 267,000 documents demonstrates that Rule 37 sanctions are not appropriate." (2/13/17 Def.'s Ltr. at 5).

The Court agrees with defendant that, even if certain of its responses to document requests remain incomplete, sanctions are not appropriate at this point.  A review of the materials submitted to the Court reflects that defendant has not only timely responded to document requests, interrogatories, and deficiency letters, but has attempted in good faith to satisfy its discovery obligations and point plaintiff to relevant information that was produced or is in plaintiff's own possession.  To the extent that plaintiff believes that certain requests remain outstanding, further meet and confers are warranted before the Court will consider sanctions. Indeed, because plaintiff delayed in executing a protective order and delivering a Notice of Adherence to defendant, defendant produced documents response to plaintiff's requests just three (3) months before plaintiff filed the instant motion for sanctions.  Unlike plaintiff, which delayed for months before producing its own documents or respond to defendant's own notices of deficiencies in plaintiff's productions, defendant has acted promptly and appropriately in carrying out its productions.  Further, the Court notes the irony of plaintiff raising the issue of defendant allegedly failing to list the Bates numbers of documents responsive to particular demands (see 2/13/17 Def.'s Ltr., Ex. N) when plaintiff produced documents without Bates numbers and has not provided with specificity the documents responsive in its own responses to document

34

requests.

Accordingly, plaintiff's motion for discovery sanctions is denied. To the extent plaintiff

contends that interrogatories or document requests remain outstanding, the parties are directed to

meet and confer by July 20, 2017. If they cannot reach agreement regarding specific requests,

they are directed to jointly file a letter with the Court, enumerating specific interrogatories or

requests on which they disagree, explaining their positions, and providing the request and

defendant's corresponding response.


## CONCLUSION

In light of the foregoing, plaintiff's motion for sanctions is denied, and defendant's

motion for sanctions is granted. Plaintiff is directed to reimburse defendant for all attorneys' fees

and costs incurred in filing its motion for sanctions. By July 7, 2017, defendant is directed to file

a motion for fees with the Court, including a proposed hourly rate for work performed and billing

statement for hours worked; plaintiff may file any opposition to defendant's request by July 21,

2017. Defendant may reply to plaintiff's papers by August 4, 2017.

Plaintiff is further directed to do the following by July 20, 2017:  1) re-produce any

electronically stored information with Bates stamps; 2) supplement its responses to all of

defendant's document requests, listing with specificity which individual documents are

responsive to each request; 3) produce Bates-stamped "warehouse documents" that plaintiff

claims establish defendant's liability or plaintiff's damages, or that are responsive to defendant's

Document Requests 19 through 24; and 4) respond to defendant's Special Interrogatories 2

35

through 5, including by providing itemized computations of its damages claims.

If any aspects of this Order are not complied with, the Court may recommend further sanctions to

be imposed, including, but not limited to, a further award of attorneys' fees, an order of

preclusion, striking portions of the Amended Complaint, or dismissal of plaintiff's claims.

The Clerk is directed to send copies of this Order to the parties either electronically

through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**
Dated: Brooklyn, New York
       June 5, 2017

/s/ Cheryl L. Pollak

Cheryl L. Pollak
United States Magistrate Judge
Eastern District of New York