

**David S. Sheiffer**
212.915.5771 (direct)
212.490.3000 (main)
212.490.3038(fax)
David.Sheiffer@wilsonelser.com

August 21, 2017

**VIA ECF**
Magistrate Judge Cheryl L. Pollak
United States District Court
Eastern District of New York
225 Cadman Plaza East, Chambers 1230
Brooklyn, NY 11201

> **Re:** *Excellent Home Care Services LLC v. FGA, Inc.*
> **Civil Action No.**    :    **13-CV-05390-ILG-CLP**
> **Our File No.**    :    **19365.00006**

Dear Magistrate Judge Pollak,

As you may recall, we represent the Defendant, FGA, Inc., ("FGA"). We write after a painstaking analysis of Plaintiff, Excellent Home Care Services LLC's ("EHCS") production of July 20 purportedly made in compliance with your Honor's June 5, 2017 Order. ("June 5th Order"; Ex. "A").[1]

For the reasons detailed below, given that EHCS has breached its duties to this Court and FGA and this matter remains mired in document discovery, it is respectfully submitted that appropriate sanctions pursuant to Rule 37(b)(2)(A)(ii) to (iv) are now truly warranted against EHCS. The imposition of sanctions is particularly appropriate given this Court has now seen two distinct orders breached by EHCS, and went to great lengths in the June 5th Order to detail exactly what is required to comply with Rule 34 discovery.

The tortured discovery history of this action caused by EHCS' failure to abide by governing rules, its delays, and constant requests for extensions is thoroughly chronicled in the June 5th Order. Yet despite this Court's admonishment by the June 5th Order that absent full compliance, EHCS would face further sanctions, including a preclusion order or dismissal of its complaint, it has not done so. Rather, it has now done a complete about-face on discovery and still has not produced critical documents or a true itemized damage computation.

Specifically, EHCS has not produced a single bates stamped "warehouse document," as directed in both the Court's June 5th Order, and its prior orders, but now suddenly contends there are no such responsive warehouse documents. Yet, this issue goes back to your Order of June 16, 2016 that followed several conferences, consistent good faith efforts by FGA to obtain its compliance, and came to a head when after six months and repeated missed deadlines EHCS still

---

[1] Reference to the exhibits accompany this submission are made as ("Ex. "_").

Albany • Baltimore • Boston • Chicago • Connecticut • Dallas • Denver • Garden City • Houston • Las Vegas • London • Los Angeles • Louisville • McLean
Miami • Milwaukee • New Jersey • New York • Orlando • Philadelphia • San Diego • San Francisco • Washington, DC • West Palm Beach • White Plains
Affiliates: Berlin • Cologne • Frankfurt • Munich • Paris
**wilsonelser.com**

8406205v.1

**WILSON** ELSER
WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP

had not complied. Yet, EHCS now suddenly claims there are no relevant warehouse documents in direct contravention of its July 14, 2016 letter by which, as noted in the June 5th Order, counsel for EHCS admitted there are over 22,000 **relevant** patient records in the warehouse. (See Ex. "B" and Ex. "C"). Communications between EHCS and FGA during the course of the parties agreement also substantiate this is the case. (See Ex. "D").

In fact, all EHCS has done is provide bates stamped "lists" naming over 33,000 patient claims. While those lists sometimes provided the "claimed" reasons and amounts of bills, they are duplicative in many instances, and no documents confirming that EHCS had a right to collect a particular bill or indicating what FGA did incorrectly has been provided. Yet, the sample e-mails FGA provides at Exhibit D reveal EHCS does, or at least should, have those documents. EHCS simply cannot raise spurious objections, or claim such documents are in FGA's possession. For obvious reasons then FGA must question if EHCS even truly reviewed its records.[2]

In addition, EHCS once again has failed to provide an appropriate itemization of its damages claims in response to FGA's interrogatories. It has not, in fact, produced a single document demonstrating it has any of the necessary supporting evidence required to have obtained payment for the billings it contends FGA failed to correctly handle, despite multiple bites at the apple. Overall then at this point FGA is left to defend against "lists" EHCS has produced, without any requisite supporting documents.

Given the tortured discovery history, the Second Circuit's decision in *Cine Forty Second Street Theater Corp v. Allied Artists Pictures Corp.*, 602 F.2d 1062 (2nd Cir. 1979), enforcing a Magistrate Judge's order precluding admission of damage evidence for the plaintiff's repeated failure to answer interrogatories after four years of litigation, is uniquely applicable here:

> We believe that our view advances the basic purposes of Rule 37, while respecting the demands of due process. The principal objective of the general deterrent policy of *National Hockey* is strict adherence to the "responsibilities counsel owe to the Court and to their opponents," Negligent, no less than intentional, wrongs are fit subjects for general deterrence, and gross professional incompetence no less than deliberate tactical intransigence may be responsible for the interminable delays and costs that plague modern complex lawsuits. An undertaking on the scale of the large contemporary suit brooks none of the dilation, posturing, and harassment once expected in litigation. The parties, and particularly their lawyers, must rise to the freedom granted by the Rules and cooperate in good faith both in question and response.

602 F.2d at 1064 (citations omitted). Not only did the Second Circuit's decision in *Cine Forty* make clear that willful conduct is not required to impose Rule 37(c) sanctions, which encompasses the sanctions permitted by Rule 37(b)(2)(A), but given the well documented discovery history after nearly four years of litigation in this action, dismissal of the complaint or,

---

[2] EHCS produced anew a series of "lists" that, while substantial in length and provide certain limited information about what it claims, fail to provide supporting documents. Given the volume of these "lists" upon the Courts request a full set will be provided upon request. A sample part is attached as Exhibit "E".



at a minimum, a preclusion order barring damage evidence is warranted.

Indeed, as no less an authority than the Supreme Court explained upon enforcing dismissal of an action under Rule 37(c) for failing to answer interrogatories over a seventeen month period despite warnings sanctions would be imposed, just as EHCS has done here, the deterrence of Rule 37 is uniquely applicable:

> But here, as in other areas of the law, the most severe in the spectrum of sanctions provided by statute or rule must be available to the district court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent. If the decision of the Court of Appeals remained undisturbed in this case, it might well be that *these* respondents would faithfully comply with all future discovery orders entered by the District Court in this case. But other parties to other lawsuits would feel freer than we think Rule 37 contemplates they should feel to flout other discovery orders of other district courts. Under the circumstances of this case, we hold that the District Judge did not abuse his discretion in finding bad faith on the part of these respondents, and concluding that the extreme sanction of dismissal was appropriate in this case by reason of respondents' "flagrant bad faith" and their counsel's "callous disregard" of their responsibilities. Therefore, the petition for a writ of certiorari is granted and the judgment of the Court of Appeals is reversed.

*National Hockey League v. Metropolitan Hockey Club, Inc., 427 U.S. 639, 642, 96 S. Ct. 2778, 2781, 49* L. Ed. 2d 747, 751 (1979).

As we demonstrate below, because EHCS has not, as it must, produced a single document supporting its claimed billing deficiencies or what FGA did wrong for any patient, its sudden representation that there are no relevant warehouse documents despite admissions to the contrary and in the face of evidence that show that is not the case, the complaint should be dismissed, or, at a minimum, EHCS should be precluded from submitting any damage evidence.

### EHCS' July 20th "Document" Production

EHCS' disclosure of July 20, 2017, (Ex. "B"), included a Bates stamped set of documents and certain segmented "lists" referencing various patient records relative to its damage claims in this litigation. These lists identified roughly 30,000 patient billings but did not comply with this Court's prior order. Because its response still leaves FGA in the untenable position of not being able to ascertain with a relative degree of certainty exactly what billings are at issue, and what supporting proof EHCS has to support is claims, further sanctions as contemplated by the June 5th Order are warranted.

By the June 5th Order, this Court directed that EHCS, amongst other thing: (a) produce Bates-stamped "warehouse documents that plaintiff **claims establish defendant's liability or damages**, or that are responsive to defendants' Documents Requests 19 thorugh 24; and (b) respond to defendant's Special Interrogatories 2 through 5, including by providing itemized

**WILSON ELSER**
WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP

- 4 -

computation of its damages claims. (emphasis added; see Ex. A at p. 35-36).[3]

First, in direct contradiction of prior representations, and after FGA's multiple good faith efforts to secure EHCS' compliance and extensive motion practice, EHCS now asserts for the first time there are no "warehouse documents" responsive to FGA's demands. Yet, by letter of July 14, 2016, (Ex. "C"), EHCS' counsel admitted that there are "...over 22,000 relevant patients whose records are stored at the warehouse." With that letter, EHCS also produced a computerized list of over 400 pages detailing the patients whose records were in the warehouse.[4]

In response, to the June 5th Order, EHCS produced voluminous "lists," that categorized patients and certain information. No documents evidencing that it had the supporting materials to substantiate those damage claims were produced.

The "lists" produced by EHCS identify approximately 30,000 patient billings concerning 3,092 individual patients. Yet, a comparison of the "22,000 relevant patient records" identified by EHCS with its counsel's July 14, 2016 letter reveals that practically all of the 3,092 patients (98.12%) are identified in EHCS' 437 page list of "relevant" patient records that are "stored at the warehouse" produced with its July 2016 letter.

At great time and expense, FGA has identified the specific patients who appear on **both** the warehouse records list produced by EHCS and the lists it now produced as support for claims that were allegedly not correctly processed by FGA. The overlap between the relevant warehouse and EHCS latest "lists" is alarming.[5]

Cementing that its July 20th production is woefully lacking are sample e-mails by and between FGA and EHCS personnel concerning six patients EHCS has identified on both its latest damage lists and the warehouse list, by which information requests and responses derived from the patients' "paper chart" are addressed. (See Ex. "D").[6] Yet, none of this has ever been produced by EHCS in this action. It is just not FGA's burden to determine what records EHCS might have that sustain or refute EHCS' claims.

Given that a preclusion order is appropriate, where as here, there is no substantial justification for the delay in disclosure or failure to disclose is not harmless, both of which apply here, see *Design Strategy, Inc. v. David*, 469 F3d 284, 297 (2d Cir. 2006), at a minimum a preclusion order barring EHCS from introducing evidence in support of its claimed damages is warranted, if not outright dismissal.

---

[3] A copy of FGA's First Demand for the Production of Documents from Plaintiff, dated May 14, 2015, is annexed hereto as Exhibit "G."
[4] Because EHCS originally produced a 437 page list of archival, stored, or "warehouse" patient records relevant to this litigation, for the sake of brevity, attached to Exhibit "C" is, as a sample, the letter and the first nine pages of that list.
[5] For the Court's convenience attached as Exhibit "F" is a chart that identifies (1) the individual patient's name; (2) year of service; (3) the EHCS list number that EHCS produced in support of its damage claim; and (4) the bates number of that same patient list as identified in EHCS' July 2016 letter as a relevant patient record stored in the warehouse. Thus, EHCS' "NONE" response to relevant documents in the warehouse is simply disingenuous.
[6] The patients' names in the emails in Exhibit "D" that are in the damages lists and the warehouse list include: Brian Maith; Sonia Sotomayor; Thomas Holt; Tamara Kalina; and Flor Cheyene.

8406205v.1

*Interrogatory Reponses-Computation of Damages*

Magistrate Judge Azarck of this Court has clearly articulated the broad power conferred by Rule 37 to impose sanctions:

> Under its inherent authority, a court faced with a party's breach of a discovery obligation for nonproduction of evidence has broad discretion to fashion sanctions. *Residential Funding*, 306 F.3d at 107. Such sanctions can be merited for bad faith actions on behalf of a client, or for a lawyer's negligent or reckless failure to perform his or her responsibility as an officer of the court. *Wells Fargo Bank, N.A. v. National Gasoline, Inc.,* No. 10-CV-1762, 2011 U.S. Dist. LEXIS 67379, 2011 WL 2490808, at *2 (E.D.N.Y. June 22, 2011).

*United States v. Brow*, 2011 U.S. Dist. LEXIS 154238 (E.D.N.Y. Dec. 28, 2011). In this vein, here, EHCS has failed to itemize its damages, and instead merely sets forth the reasons it claims FGA breached its contractual obligations by reference to the same set of lists it employs in response to all interrogatories and document demands. As Judge Carte held: "The barebones answers to the interrogatories suggest that counsel for Defendants engaged in little or no research or inquiry of his clients. Under Rule 37(a)(4), such incomplete responses must be treated as a total failure to respond." *Wells Fargo*, 2011 U.S. Dist. Lexis 6739 at 2. EHCS' turnabout on the warehouse documents, coupled with its barebones interrogatory answers, calls Judge Carter's decision quickly to mind.

Here, rather than providing any itemized detail concerning its damage claims, EHCS has merely provided lists of patient billings without correlation to the exact reasons FGA was at fault, much less any documentary evidence that EHCS is required to maintain to validate each claim. Since "[t]he purpose of Rule 37(c) is to prevent the practice of 'sandbagging' an adversary with new evidence." *Ritchie Risk-Linked Strategies Trading (Ireland), Ltd. v. Coventry First, LLC*, 280 F.R.D. 147, 156 (S.D.N.Y. 2012), EHCS should not be permitted to claim wholesale damages across over 30,000 billings without providing a discreet computation for each. To allow otherwise certainly leaves FGA in the position of defending a great unknown.

Indeed, even apart from specific interrogatory demands, so basic is this requisite disclosure that Rule 26 requires a party in its initial disclosures to provide a computation of damages and all supporting documents, and it is incumbent upon the dilatory party to evidence why its failure to do so was harmless. *Hernandez v. NJK Contrs., Inc.*, 2015 U.S. Dist. LEXIS 57568 (E.D.N.Y. May 1, 2015); see also *Williams v. Arctic Cat, In.* 2104 U.S. Dist. Lexis 33090 (N.D. NY 2014) (holding Rule 26(a) makes it incumbent upon a party to provide a computation of damages and Rule 34 to produce all documents upon which it is based).

After more than four years of ligation, multiple discovery conferences, and motion practice EHCS' failures can hardly be said to be harmless. Indeed, even aside from patient billings, EHCS's newest damages claims readily evidence its ongoing failure to provide any itemized computation. For this reason each should at this late date be stricken.

EHCS now claims in response to Special Interrogatory 2 that it incurred damages of $1,402,347.92 for "Lack of Liquidity of Plaintiff and thus losing business due to an inability to

**WILSON ELSER**
WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP

- 6 -

pay vendors or provide services" with absolutely no calculation or documentation provided for the alleged damage. Yet, no itemization or calculation about how it arrived at this figure is provided. (Ex. "B", pp. 16-17)

FGA's Special Interrogatory 3 requested "an itemized computation of the alleged breach of the 2007 Agreement." (Ex. "H", p. 4). In response, EHCS summarily claims $3,000,000 in damages for "Additional: Costs, and losses incurred, clients loss, establishing internal billing, costs for hiring, costs for external support and recovery, consequential and incidental damages…" (Ex. "B", p. 17). No breakdown of or support of any kind for the alleged $3,000,000 "additional" damages are provided

FGA's Special Interrogatory 4 requested "an itemized computation of the alleged damage to EHCS' reputation and business caused by FGA as alleged in the Complaint." (Ex. "H", p. 4). In response, EHCS summarily states "Plaintiff did not have cash on hand, unable to pay vendors due to not being paid by insurers. Total $1,402,347.92." (Ex. "B", p. 17). Again, EHCS provided no itemization or support for this alleged damage, much less identify any vendors it did not paid.

FGA's Special Interrogatory 5 requested "an itemized computation of how Plaintiff determined the alleged sum of $7,000,000 in damages sought from FGA as alleged in the Complaint." (Ex. "H", p. 4). In response, EHCS now seeks $1,402,347.92 for "Damage to EHC's [sic] reputation and lack of ability to pay vendors" as well as $1,000,000 for "Additional potential damages (Defendant's records presently not produced or disclosed)." (Ex. "B", pp. 17-18). Once again, no itemized calculation was provided.

The above interrogatory responses violated the June 5th Order, as they fail to itemize EHCS' alleged damages, and particularly fail to specify how EHCS has calculated these damages. Taken together with EHCS sudden about face on the "warehouse documents" and its failure to produce any documents supporting its liability and damage claims other than self serving "lists," a damage preclusion order at a minimum is warranted, if not outright dismissal of the complaint is warranted as contemplated by your Honor's June 5th Order.

We thank the Court for this attention to this, and, of course, should your Honor require additional information of have any questions please do not hesitate to contact the undersigned.

Respectfully submitted,

Wilson Elser Moskowitz Edelman & Dicker LLP

David S. Sheiffer

cc: Barry Feerst, Esq.
    Barry R. Feerst & Associates
    194 South 8th Street
    Brooklyn, N.Y. 11211
    (Via ECF)

8406205v.1