UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
EXCELLENT HOME CARE
SERVICES, LLC,

                Plaintiff,

                                                  **ORDER**
      -against-                                  13 CV 5390 (ILG) (CLP)

FGA, INC.,

                Defendant.
-----------------------------------------------------------X
**POLLAK**, United States Magistrate Judge:

On June 5, 2017, this Court issued an Order imposing sanctions in the form of attorney's fees and costs upon plaintiff Excellent Home Care Services, LLC ("Excellent Home") (the "Sanctions Order"). This Sanctions Order was based on plaintiff's repeated failure to cure certain deficiencies in its discovery responses and its failure to comply with an Order of this Court issued on June 16, 2016, directing plaintiff to produce certain documents located in plaintiff's warehouse. On August 31, 2017, following plaintiff's appeal to the district court, the district court affirmed the Sanctions Order. Presently pending before this Court is defendant FGA's application for reasonable attorney's fees and costs incurred in connection with the filing of the Rule 37 motion for sanctions. In a separate application, FGA continues to complain that despite the clear orders of this Court, Excellent Home still has not produced a single document from the warehouse.

## DISCUSSION

As explained in its earlier Sanctions Order, Excellent Home, a home health care provider, entered into an agreement with FGA, in which FGA agreed to maintain, process and transmit to insurance companies and government regulators certain patient billing data generated by Excellent

Home for reimbursement. (Am. Compl.[1] ¶¶ 2, 4, 7). Plaintiff alleges that defendant FGA breached the agreement by: 1) "[f]ailing to timely and or properly transmit claims on behalf of [plaintiff], thereby resulting in denials of payment to [plaintiff];" 2) "[f]ailing to monitor claims and denials;" and 3) "[f]ailing to recognize that [plaintiff's] claims were being denied and that such claims were not resubmitted to the Carrier." (Id. ¶ 10). Plaintiff claims that it suffered damages of $7,000,000 on account of this breach of contract. (Id. ¶ 21).

On January 20, 2017, defendant filed a letter seeking sanctions pursuant to Rule 37 of the Federal Rules of Civil Procedures based on plaintiff's "continuing failure to cure specific deficiencies in its document production despite substantial efforts to voluntarily have [plaintiff] cure these deficiencies." (1/20/17 Def.'s Ltr.[2] at 1).[3] Specifically, defendant complained that plaintiff had: 1) failed to reference specific documents responsive to defendant's Document Requests 19 through 24; 2) failed to produce so-called "warehouse documents" that the Court previously Ordered plaintiff to produce; and 3) failed to provide specific responses to interrogatories seeking itemized computations of plaintiff's damages claims.

In its Sanctions Order, the Court found that plaintiff had failed to identify the documents responsive to Requests 19-24, and had failed to Bates stamp the electronically stored information. (Sanctions Order at 17). With respect to the warehouse documents, this Court had previously

---

[1] Citations to "Am. Compl." refer to the Verified Amended Complaint, filed on September 24, 2014.

[2] Citations to "1/20/17 Def.'s Ltr." refer to defendant's letter, filed on January 20, 2017.

[3] Also on January 24, 2017, plaintiff filed a letter seeking to have the Court disqualify defendant's counsel on the grounds that defendant's counsel had previously represented plaintiff in a state court action, and thus had a conflict of interest. (1/24/17 Pl.'s Ltr. at 1). That motion was denied in an Order dated September 29, 2017.

2

directed plaintiff to "produce (1) Bates stamped copies of documents in warehouse . . . within 30 days." (6/16/2016 Minute Entry[4]). As of June 5, 2017, this Order, issued almost one year earlier on June 16, 2016, had been ignored. (2/6/17 Def.'s Ltr., Ex. F). Even though defendant indicated that it was only "interested in the documentation that supports the claims asserted by plaintiff" (id., Ex. Q at 1), plaintiff took the position that it was up to defendant to review the 22,000 patient files that were stored in the warehouse. (1/27/17 Pl.'s Ltr. at 2 n.1). Not only had the Court Ordered plaintiff to produce the documents, but plaintiff conceded that it had not produced the documents, nor had plaintiff sought reconsideration of the Order or explained to the Court that the documents were irrelevant and burdensome to produce. Thus, the Court found that plaintiff had violated its discovery obligations and this Court's June 16, 2016 Order by failing to produce any documents from its warehouse that are relevant either to its damages calculations or to defendant's document requests. (Sanctions Order at 20-21). Accordingly, in its Sanctions Order, the Court ordered plaintiff to produce documents from the warehouse by July 20, 2017. (Id.) The Court also recommended sanctions in the form of attorneys' fees to be awarded to defendant's counsel based upon plaintiff's violation of Rule 37 of the Federal Rules of Civil Procedure. (Id. at 25). The Court also indicated that further noncompliance may result in a recommendation of further sanctions, such as an order of preclusion or adverse inference. (Id. at 21).

In an Order dated August 30, 2017, the Honorable I. Leo Glasser affirmed this Court's Sanctions Order.

---

[4] Citations to "6/16/2016 Minute Entry" refer to the Minute Entry for Telephone Conference proceeding held on 6/16/2016, ECF No. 62.

A.   FGA's Request for Attorneys' Fees

In its application dated July 7, 2017, FGA requests an award of $13,969.70 in connection with its efforts to secure Excellent Home's compliance with its discovery obligations and with this Court's prior Orders.

On July 21, 2017, plaintiff filed a motion for an extension of time to file its response to defendant's request for attorney's fees. In light of the amount of time these discovery issues have been ongoing, the Court denied this extension on the same day. The Court confirmed that plaintiff had until July 28, 2017 to file its response.

After hearing nothing from plaintiff regarding defendant's fee requests for almost two months, on September 18, 2017, this Court sua sponte set a hard deadline of September 22, 2017 for a response. Plaintiff still chose not to respond, nor did plaintiff request another extension. Accordingly, this Court proceeds to consider defendant's fee request.

Of the total $13,969.70 sought by defendant, $13,894.50 represents 51.1 hours in attorneys' fees expended in connection with defendant's Rule 37 motion for sanctions. The remaining $75.20 represents court costs and disbursements.

In accordance with New York State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983), defendant's counsel has submitted the Declarations of Jonathan E. Meer, Esq. ("Meer Decl."), and David S. Sheiffer, Esq. ("Scheiffer Decl."), along with contemporaneous billing records,[5] setting forth the dates and amount of time during which services were rendered, the hourly rate at which the services were charged, along with the name of the attorney performing the work and a description of services performed. (See Meer Decl., Ex.

---

[5]Defendant FGA submitted a motion to file these billing records under seal. That motion is addressed below.

4

A).

In determining whether a fee request is "reasonable," courts employ the "lodestar" method, multiplying the number of hours reasonably spent by counsel on the matter by a reasonable hourly rate. See Perdue v. Kenny A., 559 U.S. 542, 546, 551-52 (2010); Millea v. Metro-North R.R. Co., 658 F.3d 154, 166 (2d Cir. 2011); Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d 182, 183 (2d Cir. 2008); Cowan v. Ernest Codelia, P.C., No. 98 CV 5548, 2001 WL 30501, at *7 (S.D.N.Y. Jan. 12, 2001), aff'd, 50 F. App'x 36 (2d Cir. 2002). Although there is a "strong presumption that this amount represents a reasonable fee," the resulting lodestar figure may be adjusted based on certain other factors. Cowan v. Ernest Codelia, P.C., 2001 WL 30501 at *7; Quaratino v. Tiffany & Co., 166 F.3d 422, 425 (2d Cir. 1999).

1) Reasonable Hourly Rate

In determining a reasonable fee, the Court is afforded considerable discretion in determining reasonable hourly rates, in part based on its experience and an understanding of the course of the litigation. See, e.g., Matusick v. Erie Cty. Water Auth., 757 F.3d 31, 64 (2d Cir. 2014) (explaining that "[w]e afford a district court considerable discretion in determining what constitutes reasonable attorney's fees in a given case, mindful of the court's 'superior understanding of the litigation'") (quoting Barfield v. N.Y.C. Health & Hosps. Corp., 537 F.3d 132, 151 (2d Cir. 2008)); Chen v. JP Standard Constr. Corp., No. 14 CV 1086, 2016 WL 2909966, at *15 (E.D.N.Y. Mar. 18, 2016), report and recommendation adopted, 2016 WL 2758272 (E.D.N.Y. May 12, 2016) (observing that the "[c]ourt can and should exercise broad discretion in determining a reasonable fee award").

5

To calculate the presumptively reasonable fee, a court must first determine a reasonable hourly rate for the legal services performed. See Arbor Hill Concerned Citizens Neighborhood Ass'n v. County. of Albany, 522 F.3d at 183. In Arbor Hill, the Second Circuit adopted the following factors to guide the court's inquiry as to what constitutes a reasonable hourly rate:

> 1) the time and labor required; 2) the novelty and difficulty of the questions; 3) the level of skill required to perform the legal service properly; 4) the preclusion of employment by the attorney due to acceptance of the case; 5) the attorney's customary hourly rate; 6) whether the fee is fixed or contingent; 7) the time limitations imposed by the client or the circumstances; 8) the amount involved in the case and the results obtained; 9) the experience, reputation, and ability of the attorneys; 10) the "undesirability" of the case; 11) the nature and length of the professional relationship with the client; and 12) awards in similar cases[.]

Id. at 187 n.3 (citation omitted). A number of courts within the Second Circuit have applied these factors when awarding attorney's fees. See, e.g., Manzo v. Sovereign Motor Cars, Ltd., No. 08 CV 1229, 2010 WL 1930237, at *7 (E.D.N.Y. May 11, 2010); Adorno v. Port Auth. of New York & New Jersey, 685 F. Supp. 2d 507, 511 (S.D.N.Y. 2010); Cruz v. Henry Modell & Co., Inc., No. 05 CV 1450, 2008 WL 905351, at *3 (E.D.N.Y. Mar. 31, 2008).

Courts are also instructed to balance:

> the complexity and difficulty of the case, the available expertise and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively . . ., the timing demands of the case, whether the attorney might have an interest (independent of that of his client) in achieving the ends of the litigation or might initiate the representation himself, whether the attorney might have initially acted pro bono . . ., and other returns (such as reputation, etc.) the attorney might expect from the representation

Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d at 184; see also Heng Chan v. Sung Yue Tung Corp., No. 03 CV 6048, 2007 WL 1373118, at *2 (S.D.N.Y.

6

May 8, 2007).

In this case, plaintiffs were represented by the firm of Wilson, Elser, Moskowitz, Edelman & Dicker LLP (the "Firm"). In moving for fees, defendant seeks an hourly rate of $275 per hour for David Sheiffer, a partner with the Firm, admitted to practice in 1987, and Jonathan Meer, also a partner with the Firm, admitted to practice in 2007. (Sheiffer Decl. ¶¶ 4, 6; Meer Decl. ¶¶ 4, 6).

Based on the Court's knowledge of the rates generally charged in this district by partners, Mr. Sheiffer's and Mr. Meer's requested rate of $275 per hour is consistent with or lower than the rates generally awarded to partners in this district. See, e.g., Hall v. ProSource Techs., LLC, No. 14 CV 2502, 2016 WL 1555128, at *12 (E.D.N.Y. Apr. 11, 2016) (holding that a partner with twelve years of experience in litigating FLSA and NYLL wage and hour lawsuits should be awarded an hourly rate of $450); Bosoro v. American Comprehensive Healthcare Med. Grp., No. 14 CV 1099, 2015 WL 5676679, at *9 (E.D.N.Y. Aug. 31, 2015), report and recommendation adopted, 2015 WL 5686481 (E.D.N.Y. Sept. 25, 2015) (stating that "prevailing hourly rates in the Eastern District of New York [are] between $350 and $400 for law firm partners"); Bodon v. Domino's Pizza, LLC, No. 09 CV 2941, 2015 WL 3889577, at *8 (E.D.N.Y. June 4, 2015), report and recommendation adopted sub nom. Bodon v. Domino's Pizza, Inc., No. 09 CV 2941, 2015 WL 3902405 (E.D.N.Y. June 24, 2015) (holding that "recent cases have held that partners are generally entitled to recover $300 to $450 per hour"); Hui Luo v. L&S Acupuncture, P.C., No. 14 CV 1003, 2-15 WL 1954468, at *2 (E.D.N.Y. Apr. 29, 2015) (observing that the prevailing hourly rates for partners in this district ranges from $300 to $400), aff'd, No. 15 CV 1892, 2016 WL 2848646 (2d Cir. May 16, 2016); Griffin v. Astro Moving & Storage Co. Inc., No. 11 CV 1844, 2015 WL 1476415, at *8 (E.D.N.Y. Mar. 31, 2015) (collecting cases and awarding a partner at a

law firm with 27 years of employment litigation experience an hourly rate of $400 after a jury trial); Lesser v. U.S. Bank Nat. Ass'n, No. 09 CV 2362, 2013 WL 1952306, at *10 (E.D.N.Y. May 10, 2013) (awarding $425 per hour in straightforward commercial litigation to lead partner with 28 years of experience ); Ferrara v. CMR Contracting LLC, 848 F. Supp. 2d 304, 313 (E.D.N.Y. 2012) (observing that "[i]n recent years, courts in this district have approved hourly fee rates in the range of $200 to $450 partners, $100 to $300 for associates and $70 to $100 paralegal assistants"); Toussie v. County of Suffolk, No. 01 CV 6716, 2011 WL 2173870, at *2 (E.D.N.Y. May 31, 2011) (approving fees at the rate of $450 per hour for a partner with 34 years' experience).

In this case, plaintiff has not filed any opposition to defendant's fee request. Thus, the Court has not only considered the rates found reasonable in other cases, but has also considered the time and effort needed on the part of counsel based in part on plaintiff's own conduct. Based on these factors, the Court finds that the hourly rate of $275 for Mr. Sheiffer and Mr. Meer is reasonable.

### 2) Reasonable Number of Hours Billed

In awarding attorney's fees, it is necessary for the Court to determine the reasonableness of the number of hours expended by counsel on the case. See, e.g., LaBarbera v. Empire State Trucking, Inc., No. 07 CV 669, 2008 WL 746490, at *4-5 (E.D.N.Y. Feb. 26, 2007). In reviewing a fee application, the court "should exclude excessive, redundant or otherwise unnecessary hours." Bliven v. Hunt, 579 F.3d 204, 213 (2d Cir. 2009) (quoting Hensley v. Eckerhart, 461 U.S. 424, 433-35, 440 (1983)). If the court finds "that some of the time was not reasonably necessary . . . it should reduce the time for which compensation is awarded accordingly." Louis Vuitton

Malletier, S.A. v. LY USA, Inc., 676 F.3d 83, 111 (2d Cir. 2012); see also Struthers v. City of New York, No. 12 CV 242, 2013 WL 5407221, at *8-9 (E.D.N.Y. Sept. 25, 2013) (reducing fees because the fees requested for responding to motion papers were "excessive"); Jemine v. Dennis, 901 F. Supp. 2d 365, 393 (E.D.N.Y. 2012) (reducing requested fees by 10% because the "quality and complexity of the submissions and calculations" did not reflect the hours expended); Ehrlich v. Royal Oak Fin. Servs., No. 12 CV 3551, 2012 WL 5438942, at *3-4 (E.D.N.Y. Nov. 7, 2012) (reducing attorneys' fees because the attorney's litigation of the suit made apparent his "lack of experience" and for duplicative entries); Quinn v. Nassau Cnty. Police Dep't., 75 F. Supp. 2d 74, 78 (E.D.N.Y. 1999) (reducing one attorney's fees by 20% and another's by 30% for unnecessary and redundant time); American Lung Ass'n v. Reilly, 144 F.R.D. 622, 627 (E.D.N.Y. 1992) (finding that the "use of so many lawyers for relatively straightforward legal tasks was excessive and led to duplication of work," and deducting 40% of plaintiffs' lawyer's hours).

Rather than itemizing individual entries as excessive, the court may make an "across-the-board reduction, or percentage cut, in the amount of hours." T.S. Haulers, Inc. v. Cardinale, No. 09 CV 451, 2011 WL 344759, at *3 (E.D.N.Y. Jan. 31, 2011) (citing Green v. City of New York, 403 F. App'x 626, 630 (2d Cir. 2010)). Similarly, courts routinely apply across-the-board reductions for vague entries. See, e.g., Kirsch v. Fleet St. Ltd., 148 F.3d 149, 173 (2d Cir. 1998) (affirming district court's 20% reduction in attorneys' fees for "vagueness, inconsistencies, and other deficiencies in the billing records"); Moore v. Diversified Collection Servs., Inc., No. 07 CV 397, 2013 WL 1622949, at *4 (E.D.N.Y. Mar. 19, 2013) (reducing attorney's fees by 10% due to the "vagueness and incompleteness" of some of the entries); Tucker v. Mukasey, No. 03 CV 3106, 2008 WL 2544504, at *2 (S.D.N.Y. June 20, 2008) (reducing fees

by 30% in part because although some entries were detailed, others were vaguely worded or inconsistent); Marisol A. ex rel. Forbes v. Giuliani, 111 F. Supp. 2d 381, 396-97 (S.D.N.Y. 2000) (concluding that "the vagueness of some of the time records prevents the Court from determining why plaintiffs were required to expend so many hours on these tasks" and accounting for this factor by reducing fees by 15%); Cabrera v. Fischler, 814 F. Supp. 269, 290 (E.D.N.Y. 1993) (reducing fees by 30% for vague entries with insufficient descriptions of work performed), rev'd in part & remanded on other grounds, 24 F.3d 372 (2d Cir. 1994), cert. denied, 513 U.S. 876 (1994).

As noted above, defendant's counsel has submitted contemporaneous billing records, setting forth the dates and amount of time during which services were rendered, the hourly rate at which the services were charged, and the names of the individuals who provided these services, along with a description of the work performed. In total, Mr. Meer billed 31.6 hours of work, and Mr. Sheiffer billed 19.5 hours. (Meer Decl. ¶ 6, Ex. 1; Sheiffer Decl. ¶ 6). The records indicate that between January 17, 2017 and January 27, 2017, while FGA's counsel was preparing the motion for sanctions, reviewing Excellent Home's opposition papers, and preparing FGA's reply, counsel expended a total of 12.7 hours. (Meer Decl., Ex. 1). The Court finds this amount to be reasonable.

FGA's counsel also prepared for and attended the January 30, 2017 Show Cause hearing set by this Court, which plaintiff's counsel failed to attend. Indeed, when the Court contacted plaintiff's counsel, who had been listed as counsel of record since the beginning of the case, counsel indicated that he had no knowledge of the matter. Thus, the Court finds that FGA is entitled to be reimbursed for the ten hours of wasted time spent by its counsel in preparation for a hearing that did not occur as scheduled due to plaintiff's counsel's failure to appear. (Id.)

Thereafter, between January 31 and March 23, 2017, defendant's counsel prepared a supplemental motion for sanctions as directed by this Court at the January 30, 2017 conference. This amounted to 28.2 hours spent preparing defendant's submission and reviewing plaintiff's response. (Id.)

The Court notes that plaintiff was given ample opportunity to cure its defective discovery and simply ignored the requests from defendant and the Orders from this Court. Had it complied, the number of hours spent by defendant in an effort to obtain discovery would not have been as high. Since plaintiff has not challenged the reasonableness of the hours expended and based on the Court's own review of the billing records, the Court finds no reason to reduce the requested fees based on any concern that counsel inflated the number of hours or that there was a duplication of hours. Accordingly, the Court Orders plaintiff to reimburse defendant FGA for $13,894.50 in attorneys' fees as a sanction for plaintiff's failure to comply with its discovery obligations and with this Court's prior Orders.

FGA also seeks $75.20 in court costs and disbursements incurred in connection with the efforts to obtain discovery in this case. According to the invoices attached to the Meer Declaration, counsel for defendant incurred $73.40 in Pacer Service Center costs between December 12, 2016 and March 23, 2017. In addition, counsel seeks $1.80 in Pacer Service Center costs incurred on July 28, 2016 and August 12, 2016. (Id.) Since counsel has failed to explain why these expenses, which were incurred before the motion to compel was filed, should be subject to reimbursement in connection with this sanctions order, the Court awards only $73.40 as the reimbursable amount for costs.

Accordingly, the Court awards FGA $13,967.90 in fees and costs incurred with the

sanction Order of June 5, 2017.

B.    FGA's Renewed Motion to Compel

By letter dated August 21, 2017, defendant FGA complains that plaintiff, despite the clear orders from this Court, has still failed to provide a single Bates stamped "warehouse document." (Def.'s 8/21/17 Ltr[6] at 1). According to defendant, rather than producing the 22,000 relevant documents that plaintiff admitted in its July 16, 2016 letter, plaintiff is now taking the position that there are "no relevant warehouse documents." (Id. at 2). Defendant represents that plaintiff has simply provided Bates stamped "lists" of 33,000 patient claims, which at times provide the claimed reasons and amounts of the bills, but which are duplicative in many instances and which lack confirmation that Excellent Home was actually entitled to collect on these claims. (Id.) Defendant argues that plaintiff should not be allowed to raise "spurious objections, or claim such documents are in FGA's possession," given that the records that FGA has received indicate clearly that plaintiff has access to documents that should have been produced. (Id.) Indeed, defendant questions whether plaintiff actually reviewed its own records. (Id.)

Defendant also complains that despite this Court's Orders, plaintiff still has not provided an itemization of its damages calculations. (Id.) According to FGA, plaintiff has not produced a "single document demonstrating it has any of the necessary supporting evidence required to have obtained payment for the billings it contends FGA failed to correctly handle." (Id.) Although plaintiff provided a list of 30,000 patient billing records, defendant contends that it is unclear which of these 30,000 patients are at issue in this case. (Id.) Defendant contends that under the

---

[6] Citations to "Def.'s 8/21/17 Ltr" refers to the defendant's letter motion, dated August 21, 2017.

holdings in Cine Forty Second Street Theater Corp. v. Allied Artists Pictures Corp., 602 F.2d 1062 (2d Cir. 1979) and National Hockey League v. Metropolitan Hockey Club, Inc., 427 U.S. 639, 642 (1979), the appropriate sanction for plaintiff's continued failure to comply with its discovery obligations and this Court's Orders is entry of a preclusion order barring any evidence of damages, or "outright dismissal." (Id. at 3, 4).

In its Sanction Order, this Court Ordered plaintiff to provide the warehouse documents that plaintiff claims establish defendant's liability and/or damages. (Sanctions Order at 20-21, 25). The plaintiff was also explicitly Ordered to provide an itemized computation of damages. (Id.) Although plaintiff has had two months to respond to defendant's motion to preclude or dismiss, plaintiff has not filed any response to the defendant's August 21, 2017 letter.

Accordingly, because the sanction sought by defendant is case dispositive, the Court Orders plaintiff to Show Cause by November 10, 2017 why the case should not be dismissed, or an order of preclusion entered, based on plaintiff's continued violations of this Court's Orders and its discovery obligations under Rule 37 of the Federal Rules of Civil Procedure.

### C. FGA's Motion to File Documents Under Seal

On June 30, 2017, FGA filed a motion for leave to file its attorney declarations and billing records under seal. According to FGA, these billing records and entries "include confidential information." (6/30/17 Mot.[7] at 1).

Pursuant to Federal Rule of Civil Procedure 26(c), the Court may issue a protective Order allowing documents to be filed under seal upon a showing of good cause. In re Agent Orange

---

[7] Citations to "6/30/17 Mot." refer to FGA's Motion for Leave to File Under Seal, filed on June 30, 2017.

Prod. Liability Litig., 821 F.2d 139, 145 (2d Cir. 1987). "Ordinarily, good cause exists 'when a party shows that disclosure will result in a clearly defined, specific and serious injury.'" In re Terrorist Attacks on Sept. 11, 2001, 454 F. Supp. 2d 220, 221 (S.D.N.Y. 2006) (quoting Shingara v. Skiles, 420 F.3d 301, 306 (3d Cir. 2005)).

There is a longstanding tradition in the judicial system of maintaining public access to judicial records, which creates a "presumption of access" to the public. Lugosch v. Pyramid Co. of Onondaga, 435 F.3d 110 (2d Cir. 2006). In Lugosch v. Pyramid Co. of Onondaga, the Second Circuit specified several factors that weigh in favor of granting public access to a document: 1) the document must be "judicial," meaning "'the item filed must be relevant to the performance of the judicial function and useful in the judicial process,'" id. at 119 (citing United States v. Amodeo, 44 F.3d 141, 145 (2d Cir. 1995)); 2) the court must determine the relevance of the material at issue to a proper adjudication of the case, id. at 119; and 3) the court must balance these considerations against countervailing factors including "the danger of impairing law enforcement or judicial efficiency" and "the privacy interests of those resisting disclosure." Id. at 120.

The Court finds that FGA has not met its burden of demonstrating "good cause" for filing its billing records under seal. First, FGA has redacted all of the billing entries that do not relate to the motions at issue in this opinion. (Meer Decl., Ex. 1). Furthermore, FGA has redacted certain confidential information within the billing entries for amounts it requests. (Id.) Having reviewed the billing records provided by FGA, the Court has found no examples of documents which might reveal attorney-client communications. If these documents, in their un-redacted form, ever did reveal attorney-client communications, the redactions already made by FGA's counsel are sufficient to solve this issue.

14

Balancing the fact that FGA's billing entries are already redacted so as to not reveal any potentially privileged communications, with the public's right of access to information, the Court denies FGA's request to file its billing records and attorney affidavits under seal. Accordingly, the Court Orders that FGA re-submit these records and affidavits on the public docket.

## CONCLUSION

Having reviewed both the billing records and the time spent litigating this sanctions motion, the Court finds that the number of hours billed by FGA's counsel is not excessive. Thus, in light of the rates and hours discussed above, the Court awards $13,967.90 in fees and costs. Additionally, the Court Orders plaintiff to Show Cause by November 10, 2017 why the case should not be dismissed, or an order of preclusion entered, based on plaintiff's continued violations of this Court's Orders and its discovery obligations under Rule 37 of the Federal Rules of Civil Procedure. Finally, the Court denies FGA's motion to file its billing records under seal and Orders that FGA re-submit these records and attorney affidavits on the public docket.

The Clerk is directed to send copies of this Order to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
October 23, 2017

/s/ Cheryl Pollak
Cheryl L. Pollak
United States Magistrate Judge
Eastern District of New York